## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

SHAN CHELEY,                          )
                                      )
              Petitioner,             )
                                      )
v.                                    )          CV421-363
                                      )
                                      )
WARDEN PHIL HALL                      )
                                      )
              Respondent.             )

## REPORT AND RECOMMENDATION

Petitioner Shan Cheley filed his Writ of Habeas Corpus pursuant to 28 U.S.C. 28 U.S.C. § 2254 on December 27, 2021,[1] seeking relief from his 2013 conviction by the Superior Court of Chatham County Georgia. *See* doc. 1 at 1; *see also generally Cheley v. State*, 786 S.E.2d 642 (Ga. 2016) (affirming conviction).  The Court granted his Motion to proceed in forma pauperis ("IFP"), directed the Respondent to respond, and directed Cheley to reply to Respondent's response within 60 days from the date the pleading was served.  *See* doc. 7 at 2-3.  However, Cheley never

---

[1] Cheley's Petition was not signed or dated, but it was filed on the docket on this date. *See generally* doc. 1.  He corrected the deficiency by filing a signature page dated January 9, 2022.  Doc. 6 at 2.

1

replied to the Respondent's Answer-Response, which was filed on March 15, 2022.  Doc. 12.  The Court then recommended dismissal due to Cheley's failure to respond, doc. 15, and Cheley objected, doc. 18.  He clarified that he wished to pursue his petition, despite his failure to reply to the Respondent's arguments, *see id.*, and he resubmitted several documents which he had previously filed, doc. 19.  The Court therefore vacated its R&R recommending dismissal.  Doc. 21.  However, Cheley never replied to the Respondent's Answer-Response.  *See generally*, docket.  The Court infers that he wishes to rest upon his arguments contained in his original motion, doc. 1, and expounded upon in his brief in support of his Petition, doc. 10; *see also* doc. 19 at 12-52.  The Court considers his Petition ripe for review.

## I.   Background and Procedural History

At Cheley's trial, evidence indicated that Cheley murdered Amber Deloach at his home, then wrapped her body in his own bedding and placed her in the back of her rental vehicle which he then drove to the downtown Savannah area and lit on fire using gasoline and a lighter purchased at a nearby convenience store.  *See generally*, doc. 14-12, 14-13 at 1-265.  Among other witnesses, the State presented the testimony

2

of two jailhouse informants: Michael Burnett and Patrick George.  Doc. 14-12 at 296-336.  During closing arguments, the prosecutor explained George's apparently dodgy behavior on the stand by surmising that he was nervous because "snitches get stitches."  Doc. 14-13 at 207-08.  The defense objected, and the Court sustained the objection.  *Id.* at 208.  However, no curative or rebuking instruction was requested or given, and the defense did not protest further.  *Id.*  Cheley was convicted of malice murder, felony murder, aggravated assault, arson, and possession of a controlled substance.  Doc. 14-13 at 259.  The trial court subsequently vacated the arson conviction based on a defect in the indictment, the felony murder conviction was vacated by operation of law, and the remaining aggravated assault conviction merged with the malice murder conviction for purposes of sentencing.  *Cheley*, 786 S.E.2d at 644 n. 1.  Cheley received a life sentence for malice murder and a consecutive 15-year sentence for possession of cocaine.  *Id.*

Cheley was represented post-trial and on direct appeal by Steven Sparger.  Doc. 14-13 at 350; *see also Cheley*, 786 S.E.2d at 644.  He enumerated four errors on appeal: (1) the trial court erred when it denied Petitioner's motion to suppress statements he claimed to have made after

3

he invoked his right to remain silent; (2) the trial court erred when it denied Petitioner's motion to exclude or redact a State's exhibit; (3) the trial court erred when it limited his cross-examination of two jailhouse informants who testified for the State; and (4) the trial court erred when it only sustained trial counsel's objection to the State's closing argument remark, instead of also rebuking the prosecutor. *See Cheley*, 786 S.E.2d at 644. The Georgia Supreme Court affirmed his convictions. *Id.*

Cheley then filed *a pro se* habeas corpus petition in the Superior Court of Telfair County on February 24, 2017, in which he challenged his Chatham County convictions and raised four grounds for relief: (1) ineffective assistance of trial counsel for failing to object to prosecutor's removing evidence from the courtroom to confer with a prosecution witness before giving testimony; (2) ineffective assistance of trial counsel for failing to file a motion for change of venue; (3) ineffective assistance of trial counsel for failing to object to the prosecutor's closing remark of "snitches get stitches;" and (4) ineffective assistance of trial counsel for "not disputing indictment be quashed instead of nol pros," a claim which appears to be based on an indicting grand juror member's status as a felon. *See* doc. 14-2 at 1, 5-6. He then amended his state habeas petition

to add the following seven grounds for relief: (1) appellate counsel's ineffectiveness for failing to raise on appeal trial counsel's failure to object to prosecutors removing evidence from the courtroom to confer with witness; (2) appellate counsel's ineffectiveness for failing to raise on appeal trial counsel's failure to file a motion for change of venue; (3) appellate counsel's ineffectiveness for failing to raise on appeal trial counsel's failure to object to prosecutor's improper statements and references to Cheley's character; (4) appellate counsel's ineffectiveness for failing to raise on appeal trial counsel's failure to file a motion to quash the indictment; (5) appellate counsel's ineffectiveness for failing to raise on appeal "trial counsel[']s failure to appeal trial court[']s denial of motion to quash indictment;" (6) appellate counsel's ineffectiveness for failing to raise on appeal trial counsel's failure to attack the validity of a "multiplicious indictment;" and (7) appellate counsel's ineffectiveness for failure to raise on appeal trial counsel's failure "to demurrer to a vague and ambiguous indictment on count five (aggravated assault)." *See* doc. 14-3 at 1-13.

After a hearing on July 24, 2018, at which Petitioner's former appellate attorney testified, the state habeas court denied relief in an

order filed June 20, 2019. Doc. 14-4. The state habeas court renumbered Cheley's grounds for relief so that Grounds (1)-(4) designated his trial counsel ineffectiveness claims raised in his initial petition, and Grounds (5)-(11) included his appellate counsel ineffectiveness claims raised in his amended petition. *See* doc. 14-4 at 3-4. The state habeas court found that Grounds (1), (2), (3), and (4) were procedurally defaulted because Cheley did not raise them on direct appeal, and that he had failed to show cause and prejudice sufficient to overcome the procedural default. *Id.* at 5-11. It denied Grounds (5), (6), (7), (8), (9), (10), and (11) on the merits, holding that Cheley failed to show that his appellate counsel was ineffective. *See id.* at 11-22.

Cheley filed an application for a certificate of probable cause ("CPC") to appeal the denial of relief, doc. 14-5, which was denied by the Georgia Supreme Court on August 10, 2021. Docs. 14-6, 14-7. Cheley filed this petition pursuant to 28 U.S.C. § 2254 on January 9, 2022, asserting the following grounds for relief: (1) appellate counsel rendered ineffective assistance for his failure to raise on direct appeal trial counsel's failure to move for a mistrial after he objected to the state's improper statement related to Cheley's character, i.e., the "snitches get

stitches" remark; (2) "appellate counsel rendered ineffective assistance for his failure to raise on direct appeal trial counsel's failure to object during closing arguments as to prosecutorial misconduct" in that defense counsel, after he objected on general grounds, "failed to request any additional rebuke or explanation by the trial judge to the jury pursuant to O.C.G.A. Sec. 17-8-75;" (3) the trial court erred by denying Cheley's motion to suppress statements made by him after he invoked his *Miranda* rights; and (4) the trial court erred by improperly limiting the petitioner's cross-examination of the jailhouse informants. *See* doc. 1 at 6-13; *see also* doc. 10 at 4-6.

Respondent argues that Ground (1) is procedurally defaulted, as it is raised for the first time in Cheley's federal petition, doc. 12-1 at 13, that Ground (2) was decided on the merits by the state habeas court, and its decision denying that claim warrants deference because it is not contrary to or an unreasonable application of law, *id.* at 11-13, and that Grounds (3) and (4) were last asserted in direct appeal, and the state appellate court's decision denying the merits of that claim warrants deference as well, *id.* at 4-12.

7

## II.    Legal Standard

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides "[a] general framework of substantial deference [for] our review of every issue that the state courts have decided" on the merits.  *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1141 (11th Cir. 2005).  Under that Act, a federal court shall not grant habeas relief on any claim "adjudicated on the merits" in state court unless the state court's decision denying relief was either "contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(1)-(2).

For purposes of § 2254(d)(1), the phrase "clearly established federal law" refers only "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The decision of a state court is "contrary to" clearly established federal law when the state court "applied

a rule in contradiction to governing Supreme Court case law" or "arrived at a result divergent from Supreme Court precedent despite materially indistinguishable facts." *Dill v. Allen*, 488 F.3d 1344, 1353 (11th Cir. 2007). And a state court's application of federal law is unreasonable "only if no 'fairminded jurist' could agree with the state court's determination or conclusion." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *see also Harrington*, 562 U.S. at 101 ("[A]n unreasonable application of federal law is different from an incorrect application of federal law." (internal citation, quotation and emphasis omitted)). Here, "[t]he key word is 'unreasonable,' which is more than simply incorrect." *Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1354 (11th Cir. 2020). To meet this standard, "a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Pye v. Warden, Georgia Diagnostic Prison*, 50 F.4th 1025, 1034 (11th Cir. 2022) (quoting *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (internal quotations omitted)).

Under § 2254(d)(2), courts also must defer to a state court's determination of the facts unless the state-court decision "was based on

an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Section 2254(d)(2) works much like § 2254(d)(1) in that it requires federal courts to give state courts "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015).  "We may not characterize . . . state-court factual determinations as unreasonable 'merely because we would have reached a different conclusion in the first instance.'" *Id.* at 313-14 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)) (alteration adopted).  District courts presume that the state court's factual determinations are correct, absent clear and convincing evidence to the contrary.  *Pye*, 50 F.4th at 1035; 28 U.S.C. § 2254 (e)(1).  In sum, AEDPA sets "a difficult to meet, [cit.], and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

Moreover, in this collateral habeas proceeding, even if Cheley meets his burden to show there has been a constitutional error, the question turns on whether that error resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (*quoting United States v. Lane*,

10

474 U.S. 438, 449 (1986)).  "Under this test, relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict."  *Davis v. Ayala*, 576 U.S. 257, 267-68 (2015) (quotation marks omitted).  "There must be more than a 'reasonable possibility' that the error was harmful." *Id.* (quoting *Brecht*, 507 U.S. at 637).  "Harmlessness under the *Brecht* standard is a question of law," *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012), and the constitutional error is reviewed "in relation to all else that happened at trial."  *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1114 (11th Cir. 2012) (quotation marks omitted).

## III.   Legal Analysis

The Court finds that Grounds (3) and (4), and to an extent, Grounds (1) and (2),[2] were decided by state courts on the merits, and thus applies the above-discussed AEDPA deference to those decisions.  *Williams v. Alabama*, 791 F.3d 1267, 1272 (11th Cir. 2015); *see also Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (holding that the last state court decision that

---

[2] As explained below, Cheley's assertion of Grounds (1) and (2) overlap.

provides relevant rationale is where the federal court should "train its attention."). However, to the extent that it is separable from Ground (2), Cheley's Ground (1) is asserted for the first time in federal court, and therefore, it is unexhausted.

    *A. Grounds (1) and (2)*

    Cheley argues in Ground (1) that appellate counsel was ineffective for failing to raise on appeal that trial counsel was ineffective for failing to move for a mistrial or some other rebuke after he objected to the state's closing argument. Doc. 1 at 6; doc. 10 at 7-21. In Ground (2), he argues that appellate counsel rendered ineffective assistance for failing to raise on direct appeal trial counsel's failure to make specific objections during closing arguments—an issue Cheley blames on appellate counsel's misunderstanding of the law. Doc. 1 at 8; doc. 10 at 22-27. Cheley elaborates that Ground (2) seeks relief on a theory that additional harm was caused because his appellate counsel failed to argue that trial counsel—not the trial court—erred. Doc. 10 at 26-27. It is difficult to distinguish Cheley's arguments in Ground (1) from Ground (2). The Respondent interprets his Ground (1) to concern trial counsel's failure to seek a mistrial after objecting to the prosecution's closing argument, doc.

12-1 at 13-14 and that Ground (2) concerns trial counsel's failure to seek a rebuke, more broadly, *id.* at 11-12.  However, Cheley complains of the failure to seek a mistrial on both grounds.  *See* doc. 10 at 14-15, 25.  A review of his arguments reveals that Ground (2) asserts a claim which provides more instances of prosecutorial misconduct than listed in Ground (1), and it appears based upon appellate counsel's failure to couch the appeal in terms of trial counsel error rather than trial court error. Doc. 10 at 25-27.  This failure further harmed Cheley, he argues, because he was unable to make the ineffective assistance of trial counsel argument at state habeas review.  *Id.*  However, Cheley did not reply to dispute the Respondent's differentiation of his Ground (1) and Ground (2) arguments.  *See generally* docket.

Adopting the Respondent's framing of Cheley's arguments, it is correct that the claim in Ground (1) is novel to the extent it seeks relief based on trial counsel's failure to request a mistrial as opposed to requesting a rebuke after objecting to the State's closing argument, and is therefore unexhausted.  *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first

13

properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citations omitted)).  Moreover, because Cheley failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure constitutes a state procedural bar which presently creates a procedural default. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 735 n. 1 (1991) (citations omitted) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas.").  Furthermore, the Court's review of this claim is precluded by this adequate and independent state procedural ground. *Henderson*, 353 F.3d at 891 ("Since Henderson failed to properly exhaust these claims in the state courts, and now is undeniably barred by firmly established and consistently applied state procedural rules from raising them, the claims are procedurally defaulted, and our review is precluded by this adequate and independent state procedural

ground.");³ *Snowden v. Singletary,* 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."). Thus, to the extent Ground (1) is relevant to trial counsel's failure to seek a mistrial, relief is appropriately denied. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999) (emphasizing that the relevant inquiry is "not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.,* whether he has fairly presented his claims to the state courts.") (emphasis in original).

Alternatively, to the extent Ground (1) argues ineffective assistance of appellate counsel in reference to appellate counsel's failure to raise on direct appeal that trial counsel failed to request a rebuke, it is duplicated in Ground (2) and is properly discussed below, regardless of the manner in which Cheley argues he was prejudiced by the failure. Any other basis

---

³ If Cheley now filed a state habeas petition asserting these claims, the new petition would be barred by multiple procedural rules, including, as argued by the Respondent, the rule against successive petitions O.C.G.A. § 9-14-51, as well as the state's own procedural default rules and the statute of limitations. O.C.G.A. §§ 9-14-48(d); 9-14-42(c).

15

is not asserted in a cognizable manner and thus should be denied.  *See* Rules Governing Section 2254 Cases, Rule 2(c).

Cheley's Ground (2) argues his appellate counsel was ineffective for misinterpreting the law regarding whether the trial court was obligated to issue a rebuke after sustaining the defense counsel's objection to the prosecutor's closing statement, and therefore failed to argue trial counsel error instead of trial court error.  Doc. 10 at 22.  Cheley argues that his appellate attorney, the Georgia Supreme Court, and then the state habeas court "completely misconstrued the core issue" by placing "the onus on the trial court," and finding that that counsel was not required to ask the trial court for further rebuke pursuant to O.C.G.A. § 17-8-75 given the trial court's discretion to rebuke.  *See* doc. 10 at 26-27.  Given Cheley's description of the "core issue," Ground (2) appears to claim that appellate counsel should have argued ineffective assistance of trial counsel but argued trial court error instead, and because the Georgia Supreme Court found that the trial court had no burden to *sua sponte* rebuke, *Cheley*, 786 S.E.2d at 648, the true issue of trial counsel's failure to seek the rebuke went unaddressed.

16

The statute relied upon by Cheley and interpreted by the state courts, O.C.G.A. § 17-8-75, provides that:

> "[w]here counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.").

O.C.G.A. § 17-8-75. Cheley argues in both Grounds (1) and (2) that his defense attorney was ineffective by failing to request a rebuke when the judge "stood mute" on the topic. *See* doc. 10 at 11-12; 22, 26-27. Cheley claims that the habeas court interpreted the law to allocate discretion to the Court, but that "a trial court has no duty to rebuke a prosecutor under that statute unless specifically requested by the defendant." *Id.* at 14. By extension, Cheley asserts that the habeas court erred in finding that the appellate attorney was adequate even though he failed to allege ineffective assistance of trial counsel on direct appeal regarding this issue. *See id.* at 26-27 (referencing *id.* at 14). Cheley insists that no court has addressed his actual assertion of error head on because no court has acknowledged that it was "incumbent" upon the trial counsel to request the instruction—not the trial court. *Id.* at 25.

17

To obtain relief on his claims of ineffective assistance of counsel, a petitioner must usually establish two elements. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must prove that "his counsel's performance was deficient, which means that it 'fell below an objective standard of reasonableness' and was 'outside the wide range of professionally competent assistance.'" *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 928 (11th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688, 690). When considering whether counsel's performance was deficient, the Court "review[s] counsel's actions in a 'highly deferential' manner" and applies "a strong presumption . . . of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). Second, a petitioner must establish prejudice, which means that "but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694).

As is required here, establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *Harrington*, 562 U.S. at 101. When § 2254(d) applies, the question is not whether *counsel's* actions were reasonable. The pivotal question is

18

whether the *state court's* application of the *Strickland* standard was unreasonable. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself. *Id.* Thus, for purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. Here, the state court's determination that Cheley's claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Harrington*, 562 U.S. at 101 (citing *Yarborough,* 541 U.S. at 664).

The Georgia habeas court found that Cheley failed to establish *Strickland* prejudice on this claim even "[a]ssuming that trial counsel erred by not requesting additional rebuke." *See* doc. 14-4 at 14-16. It noted that, following the objection, the prosecutor clarified her statements and stated that "she was speaking generally about the consequences of having a reputation for snitching in jail." *Id.* at 16. Thus, according to the habeas court, the prosecutor's explanation meant that Cheley could not show prejudice from his trial counsel's failure to request "additional rebuke." *Id.* Cheley has not shown that the state

19

habeas court's application of *Strickland's* prejudice standard was unreasonable but has simply relied upon his arguments of trial and appellate attorney error.  The Court finds that the state habeas court's decision was not an unreasonable application of the law, and therefore, recommends denying relief to Cheley on Grounds (1) and (2).  *Williams*, 529 U.S. at 410.

     *B. Ground (3)*

     Cheley's Ground (3) claims that the trial court erred by denying Cheley's motion to suppress statements made by him after he invoked his *Miranda* rights.  Doc. 1 at 10-11.  Cheley's briefing on this Ground states only the following: "see appellate record."  Doc. 10 at 28.  A review of that record indicates that Cheley made two Mirandized statements during interviews with law enforcement, one on October 4th and another on October 18th.  *See Cheley*, 786 S.E.2d at 645; *see also* doc. 14-10 at 78-185, 186-429.  The first of those statements occurred after Cheley was identified as the man who was seen purchasing gasoline and a lighter near the location of the burning vehicle.  Doc. 14-10 at 78-185.  Law enforcement officers brought Cheley to the police station, where he was advised of his *Miranda* rights.  *Id.* at 84-85.  Cheley acknowledged he

understood them, and he answered several questions about his whereabouts on the evening of September 29. *Id.* at 85-94. At some point, Cheley complained that investigators had not revealed the subject of their investigation, and after some back and forth, he exclaimed that he was "completely finished." *Id.* at 128. Later in that conversation, Cheley made remarks about being "done" and having "nothing else to say." *Id.* at 176. When this interview concluded, Cheley was arrested on an unrelated charge, and in the course of that arrest, officers found that Cheley had cocaine on his person. *Id.* at 179; doc. 14-12 at 487.

The Georgia appellate court noted that "[i]n context, Cheley's [October 4th] statement that he was 'completely finished' was not an unequivocal assertion of his right to remain silent," and that "a reasonable law enforcement officer would have understood Cheley to mean only that he had lost patience with the repeated and continued questions" about his activities because he wanted to know what the investigators were investigating and they would not tell him. *Cheley*, 786 S.E.2d at 645. The Georgia Supreme Court observed that the investigators thereafter did nothing that would be "reasonably likely to elicit an incriminating response, and none did." *See id.* at 646 (citing

*Rhode Island v. Innis,* 446 U.S. 291, 299(2)(A) (1980) ("*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent," meaning "[a] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect"). Therefore, there was no Fifth Amendment violation as to the failure to suppress that statement.

As to Cheley's October 18th statement, the Georgia Supreme Court found that Cheley asked for the opportunity to give a second statement, and thus it was made on his own request. *Cheley*, 786 S.E.2d at 646. He was brought from the jail, where he was being held on drug charges, and he was advised of his *Miranda* rights. *Id.* After he provided the same information as before regarding his reasons for purchasing the gasoline and lighter, Cheley stated that he was "done talking" and that he had "no more to say." *Id.* The appellate court's factual finding was that the investigators then "stopped asking questions about his case, they answered a number of questions that Cheley posed, and they allowed Cheley to leave the interrogation room to smoke a cigarette." *Id.* While on his smoke break, Cheley indicated that he wanted to continue his statement, and asked the officers more questions about their "theory" of

22

the case. *Id.* Cheley then accepted the officers' offer to bring his mother to their office, and while they waited for Cheley's mother to be contacted, they made "small talk" and ate lunch. Cheley took another smoke break. *Id.* When Cheley returned from his smoke break about 35 minutes later, he "acknowledged that he remembered and understood his rights," and indicated that he wanted to continue speaking with the investigators, even though he also made comments about wanting to rest and to return to jail. *Id.* However, at some point, Cheley "spontaneously" said that "everything that we been talking about, it's been all willingly," and then admitted for the first time that he had contact with the victim on the night and morning of her murder. *Id.* at 647. He claimed that he had sex with her in exchange for drugs. Cheley "soon thereafter" requested a lawyer, and "the investigators stopped questioning him and concluded the interrogation." *Id.* The Georgia Supreme Court determined that the statements were properly admitted, and thus there was no Fifth Amendment violation as to this statement either. *Id.*

The Court is required to give the Georgia Supreme Court's interpretation of the facts substantial deference, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(d)(2); *Brumfield*,

576 U.S. at 314; *Pye*, 50 F.4th at 1035.  Cheley has presented no evidence to contradict the Georgia Supreme Court's findings.  Moreover, the appellate court's interpretation of those facts is reflected in the record—both in the transcript of the interview and the testimony at trial.  *See* docs. 14-10 at 388 (Cheley confesses meeting victim); 14-12 at 487-500; 14-13 at 1-93 (Detective's testimony).  Therefore, this Court defers to the state court conclusions regarding those facts.  Upon that record, the Court also defers to the state court's determinations of the law on this "on the merits" decision because its holding is not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  Applying that deference, the Court should deny relief to Cheley on Ground (3).

 *C. Ground (4)*

 Cheley's Ground (4) alleges that the trial court erred by improperly limiting the petitioner's cross-examination of the jailhouse informants. *See* doc. 1 at 13; doc. 10 at 29.  Cheley argues that, by producing "not one (1) but two (2) jail house informants" to testify against him, there was an impression that the prosecution "had put an ad in the help wanted

sections asking for a jail-house informants," and argues that having two informants is an "anomaly."   Doc. 10 at 29-30.   He claims that the anomaly "makes the issue at bar particularly significant."   *Id*. at 30.   The "issue," Cheley argues, is that the Court improperly limited the defense's ability to cross examine the two jailhouse informant witnesses, in violation of *Davis v. Alaska*, 415 U.S. 308 (1974).   Doc. 10 at 30.   However, Cheley does not explicitly state what questions he was precluded from asking.   *See id*.   The Respondent interprets his argument as being "about their potential sentences in their pending cases," and Cheley has not disputed this articulation.   *See* doc. 12-1 at 10.

The trial Court held a pretrial hearing to determine the scope of the cross examination.   Doc. 14-11 at 493-96.   The State made clear that no deals had been made with either George or Burnette, regardless of what their subjective hopes were regarding their sentences.   *Id*. at 494. Regarding his holding, the trial judge later reiterated, "I was very clear . . .that if there was any deal made between the State and [the witness], it would clearly be material that would have to be turned over to the Defense."   *Id*. at 495.   During cross-examination, Cheley's attorney attempted to read the charges aloud, but the Court precluded him from

discussing the "specific charges or the facts and circumstances of the charges themselves." Doc. 14-12 at 292, 314-15. The trial court's ruling was affirmed on appeal. *Cheley*, 786 S.E.2d at 647-48.

Cheley now asserts that the Georgia Supreme Court, in relying upon cases such as "Jackson, Watkins, [and] Brown," engaged in an "unreasonable application of the clearly established precedent in *Davis v. Alaska*," doc. 10 at 41, because Georgia takes a "hybrid" view concerning whether the witnesses' pending criminal charges may be explored on cross examination, *id.* at 36. Cheley argues that *Davis v. Alaska* permits extensive exploration of the nature of the charges during cross-examination whether a deal existed between the witness and the prosecution regarding those charges or not. *See id.* at 37 (citing *Hines v. State*, 290 S.E.2d 911 (Ga. 1982); *Hibbs v. State*, 683 S.E.2d 329 (Ga. App. 2009); and *Manly v. State*, 698 S.E.2d 301 (Ga. 2010)). He claims that the appellate court erred by basing its ruling on the fact that no deal existed between the jailhouse witnesses and the prosecution. *Id.* at 35-37. He also insinuates that George *did* receive an undisclosed benefit for his testimony in that his charges of "aggravated assault and possession of a firearm during the commission of a crime," which had been pending

when George was in jail, were conveniently "dead docketed" by the time of Cheley's trial. *Id.* at 30-31.

Indeed, the Georgia Supreme Court noted that the trial court established that neither informant had entered into any agreement with the state, and it found that "where a witness has not obtained such a 'deal,' the defendant 'may not bring out the potential penalties faced by the witness.'" *Cheley*, 786 S.E.2d at 648 (citing *Jackson v. State,* 751 S.E.2d 63 (Ga. 2013), overruled on other grounds by *Hamm v. State,* 756 S.E.2d 507 (Ga. 2014). However, in addition to this conclusion, the Court also found that Cheley was, in fact, permitted to inquire of both informants about potential bias. During trial, the state asked Burnett about his plea and sentencing, and Burnett readily admitted that he was hopeful that his testimony would give him a benefit. *See* doc. 14-12 at 301. Cheley's attorney also asked George about his prior felony conviction, incarceration, and whether charges were pending against him when he initially spoke with the detective about Cheley. *Id.* at 321-31. The Court also allowed Cheley's attorney to inquire about George's motive to provide a statement against Cheley and whether he was testifying to "gain a benefit in [his] pending charges." *Id.* at 331. George

27

claimed he sought no benefit. *Id.* at 331-32. Cheley's attorney was not allowed to refer to "specific charges," including his non-felony and recently dead docketed charges, as distinguished from the felony charge for which he already admitted having a previous conviction, specifically.[4] *Id.* at 311.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." *Delaware v. Van Arsdall,* 475 U.S. 673, 678 (1986) (quotation marks removed). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination," especially as it exposes a witness's motivation. *Davis v. Alaska,* 415 U.S. at 315-17 (citing *Greene v. McElroy,* 360 U.S. 474, 496,

---

[4] The Georgia Supreme Court noted that, during trial, Cheley asked about "the fact that—at the time he first reported Cheley's jailhouse confession—he had additional pending charges that had since been dead docketed," *Cheley*, 786 S.E.2d at 648, but this Court's review of the record indicates no such allowance, *see* doc. 14-12 at 317-332. Cheley's attorney asked "Mr. George, at the time that you came forward and spoke to Detective Santoro in October 2012, we know you were in Chatham County Jail and you were in Chatham County jail because you had pending charges; is that correct?" *Id.* at 331. However, in a sidebar, the judge appears to have limited the attorney from asking about "other pending charges besides- . . ." to "just pending charges," generally. The Court does not find this discrepancy of facts meaningful in the overall analysis. *See Pye*, 50 F.4th at 1035 (Even if §2254(e)(1) burden is carried, depending on importance of factual error to ultimate decision, decision may still be "reasonable" under §2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322 (2003) (noting that subsections (e)(1) and (d)(2) are "independent requirements").

(1959)). "The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." *United States v. Taylor*, 17 F.3d 333, 340 (11th Cir. 1994) (quoting *United States v. Garcia*, 13 F.3d 1464, 1469 (11th Cir. 1994). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall,* 475 U.S. at 679. Moreover, as noted above, even if there was some improper limitation, if Cheley does not show "actual prejudice" from the error, federal habeas relief is improper. *Brecht*, 507 U.S. at 637 (*quoting Lane*, 474 U.S. at 449).

First, despite Cheley's suspicions, the record shows that the witnesses did not receive a benefit. Thus, though Georgia courts have held that *if* a witness *has* "obtained a concrete benefit for his testimony" he may be "challenged by exploring possible penalties for pending criminal charges as a way of gauging the impact of the benefit upon the witness," it makes no difference here. Doc. 10 at 35-36 (citing *State v.*

29

*Vogleson*, 571 S.E.2d 752 (2002)).  More importantly, Cheley's counsel (and the state) had and took the opportunity to raise doubts about the witnesses' credibility, and their testimony indicated the extent of their "ulterior motives." *See, e.g., Johnson v. State*, 341 S.E.2d 220, 223-24 (Ga. 1986) (where, "in contrast to *Hines,* the state itself brought out during direct examination of [the witness] the fact that [the witness] faced two pending felony charges which were unrelated to the instant case" and where "the defendant's opportunity to cross-examine [the witness] was not abridged," there was no error.).  His attorneys inquired as to "whether the witness[es] may be shading [their] testimony in an effort to please the prosecution," by directly asking them whether they hoped to gain a benefit from testifying.  *Hines*, 290 S.E.2d at 914; *see also* doc. 14-12 at 301-308, 331-332.   In other words, their motivations were properly questioned in front of the jury. *Contra McKinzy v. Wainwright,* 719 F.2d 1525, 1527 (11th Cir. 1983) (Where "[t]he questions that might have established a motive for the witness to try and please the state were entirely unexplored," §2254 denial reversed and remanded for determination of facts as to whether requested cross examination would have been relevant to suggest bias.).  Therefore, a reasonable jury would

not have received a significantly different impression of either witness's credibility or reliability, had the details of their charges been explored on cross examination. *See United States v. Allen*, 189 F. App'x 885, 888 (11th Cir. 2006); *Taylor,* 17 F.3d at 340.

Second, neither *Davis v. Alaska*, nor the cases Cheley relies upon to argue that "[w]hether or not such a deal existed is not crucial," (doc. 10 at 37), in determining the scope of the defendant's cross examination *require* the court to allow discussion of the specific charges mandating the prisoner witness's custody.  Those cases merely support the notion that the underlying motivation for testifying may be explored.  *See id (citing Hines*, 290 S.E.2d at 914 (holding trial court erred by cutting off *in limine* all inquiry on pending criminal charges to determine motivations for testifying); *Hibbs*, 683 S.E.2d at 331-32 (holding that trial court abused its discretion where it disallowed the defense to delve into fact that witness was in custody when he made accusations against defendant, because defendant was "entitled to a reasonable cross-examination on the relevant issue of whether the witness entertained any belief of personal benefit"); and *Manly*, 698 S.E.2d at 306-07 (holding that co-defendants should have been allowed to question the informant

31

about the basis of his plea in effort to show that he had a potential to be biased in favor of the State at the time that he gave his statement.); *Vogleson*, 571 S.E.2d at 754-55 (Allowing defense counsel to explore penalty reductions for charges which are not pending asks witnesses to "speculate about the punishment that could be imposed upon him should the State decide to prosecute him for the criminal conduct he had admitted in his testimony)).  Even if these cases did create some "hybrid" precedent, Cheley points to no U.S. Supreme Court case which requires trial courts to permit such a specific scope on cross, and in fact, that precedent allows the opposite.  Courts have discretion in this regard.  *Van Arsdall,* 475 U.S. at 679 (providing "wide latitude" insofar as the trial court's ability to impose reasonable limits on cross-examination).  Thus, the Court finds the state court's treatment of his confrontation claim, Ground 4, was not contrary to law.  Cheley's request for relief in Ground (4) should, therefore, be denied.

## IV.   Conclusion

Because Cheley has not shown that the state court decisions were "contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the

United States," the Court should defer to the decisions of the state courts and should deny relief to Cheley.  28 U.S.C. § 2254(d)(1).  To the extent that any of his claims, including his ineffective assistance claim relevant to his trial counsel's failure to request a mistrial and his appellate counsel's failure to appeal that failure, is presented for the first time here, it is procedurally defaulted.  Cheley has not argued cause or prejudice to excuse that procedural default, and therefore, his arguments fail. *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).  Accordingly, it is **RECOMMENDED** that Cheley's Petition for Writ of Habeas Corpus be **DENIED**.

Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either.  28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant") (emphasis added). This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B)

and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED** this 17th day of May, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA